1  David M. Levin, SBN 193801
   Robert P. Capistrano, SBN 70382
2  BAY AREA LEGAL AID
3  1025 Macdonald Avenue, P.O. Box 2289  **A D R**
   Richmond, CA  94801
4  Telephone:  510-233-9954
   Facsimile:  510-236-6846
5  Email:  dlevin@baylegal.org

6  Attorneys for Plaintiffs GOLDEN GATE VILLAGE
        ELECTION COMMITTEE et al.
7



8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10  GOLDEN GATE VILLAGE                    )  Case No.
    ELECTION COMMITTEE, HAZEL GOFF,        )    **C12-4226 JSC**
11  GERALD TAYLOR, and GLADYS DENIS,       )
12                    Plaintiffs,          )  **COMPLAINT FOR PRELIMINARY
                                           )  AND PERMANENT INJUNCTIVE
13                                         )  AND DECLARATORY RELIEF**
                     vs.                   )
14                                         )
    MARIN HOUSING AUTHORITY,               )  (Violation of Federal and State
15  INTERIM EXECUTIVE DIRECTOR             )  Fair Housing and Civil Rights Laws)
    EDWARD GRIFFIN [in his official        )
16  capacity], and DOES 1-10,              )
17                                         )
                    Defendants.            )  **JURY TRIAL DEMANDED**
18                                         )

19
20      Plaintiff Golden Gate Village Election Committee, an unincorporated association,

21  and its members comprising Plaintiffs Hazel Goff, Gerald Taylor, and Gladys Denis, for

22  their Complaint, allege as follows:

23                   **INTRODUCTORY STATEMENT**

24      1.    Since January 2012, a group of residents of the primarily African-American

25  Golden Gate Village ("GGV") have been requesting assistance from the Marin Housing

26  Authority ("MHA") to form a resident council at this HUD-subsidized public housing

27  property in Marin City.  GGV represents 70% of MHA's public housing residents, yet has

28  only 10% of the representatives of the current, MHA agency-wide residents' council for all

1    of Marin County. The purpose of these councils is to give the residents a forum to voice

2    their concerns, and GGV residents seek to form a local independent resident council

3    because of their lack of representation. Despite numerous requests by GGV residents for

4    help, and even though the agency has committed to "affirmatively further fair housing" as

5    required by federal laws and regulations, MHA refuses to cooperate or assist in any way

6    with the formation of a local resident council at GGV.

7         2.       MHA's Executive Director Edward Griffin rejected this request for a local

8    resident council at GGV, and stated he will only recognize a so-called "Agency-Wide

9    Resident Council" ("AWRC") to represent all six of the rental properties that MHA

10    operates in Marin County. This decision has the purpose or effect of discriminating

11    against African Americans based on their race, and against families with children based on

12    their familial status, in violation of the Fair Housing Act, 42 U.S.C. section 3601 *et seq.*,

13    and related federal and state laws.

14         3.       Although two-thirds of Marin County public housing residents – almost 700

15    people – live at GGV (the only MHA property for families with children), of ten AWRC

16    members only one lives at GGV. Nearly all the AWRC representatives live at the other

17    considerably smaller MHA properties, each of which has less than 60 units of housing only

18    for elderly and disabled residents. Furthermore, approximately 70% of GGV residents are

19    African-American, in sharp contrast to the other MHA properties with about 7% African-

   Americans residents (approximately 3% of Marin County residents are African-American).

20         4.       HUD regulations governing MHA's operation of GGV clearly promote the

21    benefits of resident participation, and require MHA to support the formation of local

22    resident councils. Also, HUD regulations specifically provide for both jurisdiction-wide

23    and local resident councils to exist together. The ability to form resident councils which

24    actually represent the residents is accordingly part of the panoply of services provided in

25    connection with rental housing, and a term, condition or privilege of that rental within the

26    meaning of 42 U.S.C. § 3604.

27         5.       MHA's refusal to assist GGV residents with their request to form a local

28    resident council thus runs counter to these HUD regulations, and violates MHA's

1  obligation to affirmatively further fair housing under the Fair Housing Act and other state

2  and federal laws. Therefore, the GGV Election Committee asks this Court for an Order

3  requiring MHA to comply with HUD regulations, and state and federal fair housing laws,

4  by working with Golden Gate Village residents to elect a local resident council.

5

6  ## JURISDICTION AND VENUE

7  6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331

8  because it arises under 42 U.S.C. § 3601 et seq., and for redress of violations of Plaintiff's

9  rights under Federal Fair Housing Laws.

10  7.     Venue is proper in this Court under 28 U.S.C. § 1391 because the events at

11  issue occurred in this judicial district.

12  8.     A number of claims asserted herein allege violations of state law, and arise

13  out of the same transaction or series of transactions on which the federal claims are based,

14  and therefore this Court has supplemental jurisdiction over these state law claims.

15

16  ## INTRADISTRICT ASSIGNMENT

17  9.     The claims alleged herein arose in the County of Marin. This action is

18  properly assigned to either the Oakland or San Francisco Division of the United States

19  District Court for the Northern District of California pursuant to Civil Local Rule 3-2(d).

20

21  ## PARTIES

22  10.    Plaintiff Golden Gate Village Election Committee is an unincorporated

23  association located in Marin City, in Marin County, and comprised of three residents living

24  at Golden Gate Village ("GGV"): Plaintiffs Hazel Goff, Gerald Taylor, and Gladys Denis.

25  11.    Defendant Marin Housing Authority ("MHA") is a public corporation

26  authorized by law to provide decent, safe and sanitary housing for low and moderate

27  income people, and directed by the Marin Housing Authority Commission.

28  12.    On information and belief, Edward Griffin is the Interim Executive Director

    of MHA, and his office is located in Marin County, State of California.

1    13.    Plaintiffs are ignorant of the true names and capacities of the Defendants
2  named herein as Does 1 through 10, and Plaintiffs therefore sue these Defendants by their
3  fictitious names. Plaintiffs will amend their complaint to allege the true names and
4  capacities of these Doe Defendants when they have been ascertained.

5    14.    Plaintiffs are informed and believe, and on that basis allege, that each of the
6  Defendants, including the Doe Defendants, is responsible for the occurrences herein
7  alleged.

8    15.    Plaintiffs are informed and believe that each Defendant, including the Doe
9  Defendants, was the agent or employee of each of the other Defendants, and in perpetrating
10  the wrongful conduct detailed in this complaint, acted within the scope of such agency or
11  employment, or ratified the acts of the other.

12
13                          **STATEMENT OF FACTS**
14                    **History of Marin City after World War II**

15    16.    Prior to World War II, the land that would become Marin City was home to
16  a dairy farm and a handful of families. Soon after war was declared on December 8, 1941,
17  20,000 workers migrated to the Marin City area from all over the United States, attracted
18  by the jobs at Marinship Shipyards, the Sausalito-waterfront shipyard owned by Bechtel.
19  In 1942, Marin City was rapidly constructed to house 6,000 of those workers. In less than
20  three years, Marinship workers built and launched a total of 93 liberty ships and tankers –
    a vital contribution to the country's "Arsenal of Democracy."

21    17.    This "instant community," constructed during World War II by a joint
22  venture between the federal government and the Marin County Housing Authority (which
23  was created to manage the project) boasted 2,700 dormitory and apartment units, a school,
24  a public library, a variety of stores, cafes, and barber/beauty shops, a health facility, and a
25  community center.

26    18.    At its peak, Marin City had a population of 6,500 people, including over
27  1,000 school-aged children. As one of the country's first racially integrated federal
28  housing projects, Marin City was home to Midwestern Whites (85%), Southern Blacks

1    (10%), and Chinese immigrants (5%) who worked around the clock to build liberty ships
2    in the Marin shipyards.

3    19.    Although the majority of guest laborers departed Marin City at the end of
4    the war, many of the African-American shipyard laborers who had migrated from the
5    Southern U.S. remained – some by choice, and some due to racially discriminatory laws
6    limiting housing opportunities in other parts of Marin County. In contrast to war times
7    when African-Americans comprised only 10% of Marin City's population, after the war
8    ended African-Americans soon became the core of this community.

9    20.    By 1962, Marin City's population had been reduced to 1,300. The White
10   and Chinese laborers were virtually gone, leaving behind a community that was now 90%
11   African-American. The wartime housing was torn down, replaced by 300 public housing
12   units, 82 single-family homes, and a 104-unit cooperative.

13   21.    Currently, Marin City is the most diverse community in Marin County.
14   There are approximately 4,000 residents, of whom approximately 40% are African-
15   American, 33% are White, 10% are Hispanic, 8% are Asian/Pacific Islander, and 9%
     Other.
16

17

18                     **Marin Housing Authority and Golden Gate Village**

19   22.    The Marin Housing Authority administers a total of 500 public housing
     units in Marin County, 300 of which are located at Golden Gate Village in Marin City. The
20   remaining 200 units are in nine small elderly/disabled complexes spread across the county.
21   Black/African-American households are disproportionately represented in Golden Gate
22   Village. According to data provided by the Marin Housing Authority in 2010, 71% of
23   Golden Gate Village residents are Black/African-American, as compared to only 7% of
24   residents of the other public housing projects in the County. Contrast this with 2010
25   Census data which shows that a scant 2.8% of Marin County is Black/African-American.
26   Further, Golden Gate Village is the only public housing complex in Marin County for low
27   and moderate income families with children.

28

1    23.    The following chart presents data from the MHA 2010 Annual Report, and

2   illustrates the striking disparity between the residents living at GGV, and the number of

3   people who represent public housing residents on the current AWRC:

| No. | Housing Project | No. of Residents | Seats on AWRC | Percent African-American |
|-----|-----------------|------------------|---------------|--------------------------|
| 1 | Golden Gate Village (Family Housing) | 678 | 1 | 71% |
| 2 | Venetia Oaks (Elderly/Disabled) | 50 | 2 | ↑ |
| 3 | Homestead Terrace (Elderly/Disabled) | 28 | 1 | |
| 4 | Casa Nova (Elderly/Disabled) | 42 | 2 | Ave. 7% |
| 5 | Golden Hinde (Elderly/Disabled) | 42 | 1 | |
| 6 | Krueger Pines (Elderly/Disabled) | 63 | 3 | ↓ |
| | **TOTALS** | 903 | 10 | |

11    24.    These numbers are staggering: today, on the AWRC, one representative

12   speaks for 678 residents at Golden Gate Village – most of whom are African-Americans

13   and families with children – yet nine representatives speak for 225 majority White and

14   childless residents at the other five elderly/disabled properties. Under the auspices of the

15   AWRC, people of color and families with children simply do not have the voice in MHA

16   matters to which they are entitled. The disparate impact of this MHA decision to refuse

17   recognition for a local resident council at GGV is beyond dispute.

18

### Golden Gate Village Election Committee

19    25.    On January 24, 2012, a group of residents at Golden Gate Village selected

20   three residents to serve as an Election Committee and work with MHA to conduct an

21   election for a new resident council under applicable HUD regulations.    Although MHA

22   recognized a series of duly elected resident councils at GGV from about 1975 to 2009,

23   since 2010 there has been no resident council at this MHA property.

24    26.    The Golden Gate Village Election Committee is comprised of three

25   residents who are individual plaintiffs in this case: (1) Hazel Goff has lived at Golden

26   Gate Village since 1992, and is 72 years old, (2) Gerald Taylor has lived at Golden Gate

27   Village since 2005, and is 63 years old, and  (3) Gladys Denis has lived at Golden Gate

28   Village since 1970, and is 69 years old.

Complaint for Injunctive and Declaratory Relief          - 6 -          GGV Elec. Comm. v. MHA et al.

1

**GGV Request for Assistance Refused by MHA**

2      27.   On February 3, 2012, a letter was sent by Bay Area Legal Aid to then MHA

3  Executive Director Dan Nackerman on behalf of the GGV Election Committee. This letter

4  proposed dates for conducting an election of a new resident council, and named a potential

5  "election monitor" with experience from the Marin County League of Women Voters.

6  The letter stated "[w]e are eager to work with the Marin Housing Authority in conducting

7  this election, and would be happy to address any questions or concerns you may have."

8      28.   In response to this February 3 letter, Mr. Nackerman stated by phone and

9  email on February 4, 2012 that GGV residents could not form a local council because of

10  the existing MHA agency-wide council.

11      29.   On February 10, 2012, another letter was sent by Bay Area Legal Aid on

12  behalf of the GGV Election Committee, which cited HUD regulations and other laws to

13  explain that a local council could be formed at GGV despite existence of the MHA agency-

14  wide council.

15      30.   On March 19, 2012, counsel for MHA responded to the February 10 letter,

16  and stated that "HUD regs prohibit MHA from granting your request and recognizing

17  another resident council." MHA's March 19 letter took the position that a local council at

18  GGV would be a "competing council," and therefore prohibited by HUD regulations.

19      31.   On March 28, 2012, Fair Housing of Marin and Bay Area Legal Aid

20  responded, and noted HUD regulations clearly provide for the concurrent existence of both

21  jurisdiction-wide and local resident councils. This letter also explained that GGV needs a

22  local resident council "based on the unique characteristics of this historic community, and

23  which clearly faces issues very different from those that may be encountered by MHA

24  clients in other parts of Marin." This letter explained the fair housing issues involved:

25      For this reason, MHA also faces important obligations under state and
       federal law to ensure adequate opportunities for GGV residents to
       participate in decision-making as part of its duty to affirmatively further fair
26      housing, and because many GGV residents belong to racial and ethnic
       groups who are not well-represented in other Marin neighborhoods.
27      Additionally, GGV is the only public housing complex in Marin County
       available to families with children. GGV has more units and houses more
28      residents than the five other elderly/disabled housing projects in Marin

County combined, yet only one of the ten total members and alternates on the Agency-Wide Residents Council represents GGV.

Nevertheless, and despite numerous requests and meetings, MHA continues to refuse the request by GGV residents for a local resident council.

## Federal Laws and Regulations Clearly Support A Local Resident Council at GGV

32.     The United States Housing Act ("Housing Act") contemplates that in managing public housing developments, public housing authorities will support tenant programs and services, including the development and maintenance of tenant organizations participating in the management of housing projects. 42 U.S.C. § 1437a(c)(2).

33.     HUD regulations accordingly promote the formation of local resident councils, such as that requested by GGV residents, in order to adequately represent the residents. For example, 24 CFR § 964.11 sets forth this general HUD policy of fostering resident involvement at public housing properties:

> HUD promotes resident participation and the active involvement of residents in all aspects of a HA's overall mission and operation. Residents have a right to organize and elect a resident council to represent their interests. As long as proper procedures are followed, the HA shall recognize the duly elected resident council to participate fully through a working relationship with the HA. HUD encourages HAs and residents to work together to determine the most appropriate ways to foster constructive relationships, particularly through duly elected resident councils.

34.     HUD regulations also explain how local resident councils and jurisdiction-wide councils should work together, for example in 24 CFR § 964.105(c):

> There shall be regularly scheduled meetings between the HA and the local duly elected resident council, and the jurisdiction-wide resident council to discuss problems, plan activities and review progress.

35.     Given the role of tenant organizations in the governance of public housing authorities contemplated by Congress and HUD, the ability to form and maintain a truly representative resident council is a "term, condition or privilege" attendant to the rental of a public housing dwelling unit, and one of the services provided in connection with that rental within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(b).

36.    A local resident council at GGV would permit residents to participate in important MHA decisions, ranging from beautification and maintenance to planning for renovation and construction of new buildings and facilities.  HUD regulations specifically endorse the goal of resident participation in housing authority management because this helps promotes effective operations by enabling meaningful resident involvement.

37.    The MHA Agency-Wide Resident Council (AWRC) does not and cannot serve the same function of encouraging direct local resident participation at GGV.  Many of the residents at GGV face significant mobility or transportation challenges, and they are unable travel to other parts of Marin County for AWRC meetings and hearings.   The AWRC does not appear to have been formed in compliance with 24 CFR § 964.105.  Furthermore, the regional nature of the AWRC necessarily reduces its focus and accountability to residents at any single MHA property.  The AWRC cannot serve the same purpose or provide the same benefits as a local resident council at GGV.

## MHA Interfered with Plaintiffs' May 2012 Election Plans

38.    In May 2012, the GGV Election Committee tried to go forward with its election plans by arranging for the distribution of an informational flyer to all units at GGV.  These materials explained there would be an election for a local resident council, and included a form to nominate candidates by requiring 12 signatures by other residents.  The flyer also noted events with question marks where MHA assistance might be needed.  Bay Area Legal Aid sent copies of the flyers to MHA counsel by email on May 19, 2012.

39.    Shortly after these flyers were distributed by the GGV Election Committee, MHA employees or agents circulated a document to criticize the committee's efforts:

Marin Housing Authority learned there are handouts being distributed regarding the Golden Gate Village Resident Council.  These handouts have information about Marin Housing Authority that is not correct.

Please be advised that the Golden Gate Village Resident Council (GGVRC) is currently not a recognized council of MHA in accordance with law.  HUD determined that GGVRC violated certain laws, including failure to hold fair and frequent elections.  HUD supported MHA's decision to stop recognizing GGVRC.

1
2
3
4
5

MHA strongly supports resident participation in your communities, including forming any groups that Golden Gate Village residents desire to form so long as it does not violate law. MHA is willing to provide limited assistance with these initiatives, but requests for assistance must be made in advance. The handouts that have been distributed by GGVRC refer to MHA's assistance, but MHA has not provided authorization to GGVRC to include MHA in these handouts, nor has MHA agreed regarding its involvement with the current process.

6
7
8
9
10

The Agency Wide Resident Council ("AWRC") is the resident council that represents Golden Gate Village. The AWRC is recognized by MHA and HUD. Golden Gate Village's representative on the AWRC is Isaiah Wallace. MHA encourages residents to get involved with the AWRC right now. If you have any questions regarding this handout, please contact your Program Manager, Kylah Reynolds, at 415-339-1929.

11
12

40.    Despite this action by MHA, eight residents submitted petitions for nomination to the GGV Election Committee, each signed by twelve other GGV residents.

13
14
15
16

41.    The GGV Election Committee met with Defendant Edward Griffin on June 5, 2012, but he declined to provide recognition or assistance to a local resident council at GGV. Due to MHA's refusal to cooperate with the election of a local resident council, Plaintiffs decided to postpone further work toward an election and seek legal relief.

17

### MHA has an Obligation to Affirmatively Further Fair Housing

18
19
20
21
22
23

42.    HUD regulations obligate MHA to have occupancy policies that comply with the Fair Housing Act and with regulations to affirmatively further fair housing, which include taking steps to overcome the effects of conditions which result in limiting participation by persons of a particular race or other protected class. 24 CFR § 902.1(b); 24 CFR § 1.4(b)(6)(ii). MHA also certifies annually that it will affirmatively further fair housing. 42 USC § 1437c—1(d)(16) and form HUD 50077.

24
25
26

### FIRST CAUSE OF ACTION
### (Violation of Federal Fair Housing Act)

27
28

43.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

1    44.    Defendants and each of them have unlawfully refused to comply with HUD
2    rules and regulations requiring recognition and support for the Plaintiffs in their efforts to
3    form a local resident council at Golden Gate Village.

4    45.    Defendants have injured Plaintiffs and all residents of Golden Gate Village
5    by committing discriminatory housing practices in violation of the federal Fair Housing
6    Act, 42 U.S.C. section 3601 et seq.

7    46.    Defendants' actions have been negligent.

8    47.    Defendants' actions have been with knowledge of the consequences, and in
9    disregard of Plaintiffs' rights under state and federal law.

10    48.    Defendants' violation of HUD regulations resulted in a disparate adverse
11    impact on the predominately African-American residents of Golden Gate Village.

12    49.    The above-described acts and omissions of Defendants, and each of them,
13    violate Plaintiffs' rights pursuant to 42 U.S.C. section 3601 et seq.

14    50.    In engaging in the unlawful conduct described above, Defendants acted
15    intentionally and maliciously and with callous and reckless disregard of the rights of the
16    Plaintiffs.

17    51.    Plaintiffs have suffered and will continue to suffer irreparable harm if
18    Defendant is permitted to continue denying the formation of a resident council which
      adequately represents the interests of the residents of Golden Gate Village.

19    52.    Plaintiffs seek preliminary and permanent injunctive relief to prevent
20    further harm as a result of Defendants' unlawful acts.

21

22                          **SECOND CAUSE OF ACTION**
23                   **[California Fair Employment and Housing Act]**

24    53.    Plaintiffs reallege and incorporate by reference each paragraph previously
25    alleged in this complaint.

26    54.    Defendants have injured Plaintiffs by committing discriminatory housing
27    practices in violation of the California Fair Employment and Housing Act, California
28    Government Code section 12955, et seq.

1    55.    The above-described acts and omissions of Defendants, and each of them,

2    violate Plaintiffs' rights pursuant to California Government Code section 12955, et seq.

3

4                              **THIRD CAUSE OF ACTION**

5                               **Declaratory Judgment**

6    56.    Plaintiffs reallege and incorporate by reference each paragraph previously

7    alleged in this Complaint.

8    57.    An actual controversy has arisen and now exists between Plaintiffs and

9    Defendants concerning their respective rights and duties in that Plaintiffs contend that the

10   Defendants are required to recognize and assist with Plaintiffs' planned efforts to conduct

11   an election for a local resident council at Golden Gate Village.  Defendants disagree, and

12   believe their actions were lawful.

13   58.    Plaintiffs desire a judicial determination of the parties' rights and duties,

14   and a declaration as to which party's interpretation of these rights and duties is correct.

15   59.    A judicial declaration is necessary and appropriate at this time under the

16   circumstances in order that Plaintiffs may ascertain the parties' rights and duties under

17   laws and regulations, including the HUD regulations that govern operations at GGV.

18                                    **PRAYER**

19         WHEREFORE, Plaintiffs pray for judgment as follows:

20   1.    That the Court enter a Declaratory Judgment declaring that the Defendants

21   have violated the Plaintiffs' rights by refusing to support the election of a local resident

22   council at Golden Gate Village;

23   2.    That the Court order Defendants to comply with HUD regulations,

24   including good faith efforts to meet the following requirements in these regulations:

25        a.  Support election of a local resident council at GGV;

26        b.  Provide space for a local resident council to meet at GGV, and a proper

27            share of the MHA resident participation fund; and

28        c.  Actively involve the local resident council in the management of GGV;

3.      That Defendants be enjoined from retaliating in any way against any GGV resident for engaging in lawful efforts to elect or operate a local resident council at GGV,

4.      That Plaintiffs be awarded costs of suit, including attorneys' fees incurred in bringing, prosecuting and maintaining this action under state and federal law, including pursuant to 42 U.S.C. § section 3601 et seq., California Government Code section 12955, et seq., and California Code of Civil Procedure § 1021.5; and

5.      That Plaintiffs be awarded such other and further relief as the Court deems just and proper;

6.      In accordance with Fed. R. Civ. P. Rule 38(b), and Northern District Local Rule 3-6, Plaintiffs hereby demand a jury trial on all issues triable by jury.

Dated: August 10, 2012

David Levin

David M. Levin
Bay Area Legal Aid
For Plaintiffs GOLDEN GATE VILLAGE
ELECTION COMMITTEE et al.